JOHN P. HARTIGAN, ATTORNEY GENERAL *ex rel.* THOMAS J. KING *et al. vs.* TIMOTHY E. MOLLOY *et al.* BOARD OF CANVASSERS AND REGISTRATION OF THE CITY OF PROVIDENCE.

NOVEMBER 1, 1938.

PRESENT: Flynn, C. J., Moss, Capotosto, Baker and Condon, JJ.

PER CURIAM. The relators, Thomas J. King, "Independent Citizens" candidate in ward 6 for alderman of the city of Providence, and William J. Dwyer, William H. Lovett, and Nicholas F. Rioles, "Independent Citizens" candidates in said ward for members of the common council, pray for a writ of mandamus to the respondents, in their capacity as the board of canvassers and registration of the city of Providence, commanding them to certify to the secretary of state, in accordance with the provisions of public laws 1938, chapter 2640, the names of the relators as candidates for the respective offices under the above-mentioned party designa-

tion, for the purpose of causing the same to be placed on the ballot labels to be used on the voting machines at the municipal election of November 8, 1938. The petition avers in substance that the relators have severally been placed in nomination for election to said offices upon nomination papers signed by at least fifty duly qualified electors of said ward, as required by general laws 1923, chapter 11, sec. 13, and that the respondents wrongfully refuse to certify their names to the secretary of state.

At the hearing before us it was stipulated in writing by the parties that thirty-three of the one hundred and thirty-three signatures on the nomination papers were those of voters qualified to vote in ward 6 for the offices for which the relators are candidates, and, therefore, eligible to sign the nomination papers. The remaining one hundred signers were rejected by these respondents for various reasons, thirty-five of this number being rejected by them on the sole ground that such signers had signed independent nomination papers for the election of 1936. If the respondents erroneously rejected these thirty-five signatures, then the nomination papers would meet the requirements of the statute, G. L. 1923, chap. 11, sec. 13, which is as follows: "Nominations of candidates for offices to be filled by the voters of any representative-district, ward, or voting-district in any city or town may be made by nomination-papers signed in the aggregate for each candidate by not less than fifty voters qualified to vote for each of such candidates." It is to be noted at this point that the nomination papers in question are for the *election* of November 8, 1938, as distinguished from nomination papers for use in the *caucus* of a recognized political party.

The respondents contend that the thirty-five signers under consideration, who had signed independent nomination papers for candidates for the same offices under a party designation almost identical with the one in the instant case for the election of 1936, were disqualified by the provisions

of P. L. 1930, chap. 1515, sec. 6, from signing independent nomination papers for the same offices for the election of 1938, as the twenty-six months, required by the statute upon which they rely, had not elapsed between the election of November 1936 and October 4, 1938, when the nomination papers in this case were filed. The respondents admit that their contention is "novel" and that they cannot support their interpretation of the statute by any language in the statute or by any decided case. They also concede that the decision of this court in *Attorney General* v. *Clarke*, 26 R. I. 470, seems to deny their present contention.

We have carefully examined chap. 1515, especially sec. 6 thereof upon which the respondents solely rely as their authority for disqualifying the thirty-five signers in question, and we are clearly of the opinion that it has no application to the facts in the instant case. That chapter is entitled "An Act of the Holding of Caucuses in All Cities and Towns." Section 1 provides that: "In all the cities and towns of this state the *caucuses* of all *political parties* shall be held in accordance with the provisions of this act," and then proceeds to define a political party within the meaning of the act as "one which at the next preceding election of state officers cast for its candidate for governor at least two per centum of all votes cast in the state for that office." Section 6, under the heading *"Caucus Voting Qualifications"*, provides that: "No person shall be entitled to vote or take part in the *caucus of any political party,* who within twenty-six calendar months, has voted or taken part in the caucus of any other political party or has signed nomination papers of any candidate for any elective office . . . ." It is clear to us that the sole purpose of chap. 1515 is to control and regulate the caucus of a party that has attained the status of a political party as defined in the statute. (italics ours)

In the instant case we are not dealing with nomination papers of such a recognized political party for use in a caucus of that party. The nomination papers before us are nomination papers of a party or political principle that has

not acquired the status of a political party within the meaning of chap. 1515; they are signed by qualified voters who have not disqualified themselves by participation in a caucus of a recognized political party; and they are intended to nominate candidates to be voted for at the *election* of November 8, 1938. The validity of these nomination papers is determined by the provisions of G. L. 1923, chap. 11, above quoted, and the signers thereof are in no way affected by the caucus act, chap. 1515, unless they have disqualified themselves by participating in the caucus of a recognized political party within the preceding twenty-six months.

The respondents argue, by analogy to the provisions of chap. 1515, that, as the thirty-five signers under consideration signed nomination papers for a party or political principle in 1936, they are now disqualified by that fact from signing nomination papers for the same or other party or political principle, as twenty-six calendar months have not elapsed since 1936. The answer to this contention is clear. The provisions of G. L. 1923, chap. 11, by which the nomination papers in this case are governed, place no such limitation upon the class of voters represented by the thirty-five voters now being considered by us. The requirements prescribed by statute for nomination papers to be used at a *caucus* of a recognized *political party* are not to be confused with the requirements of an entirely different statute dealing with nomination papers of a party or political principle, not having the status of a political party under chap. 1515, but having the right under G. L. 1923, chap. 11, sec. 13 to nominate candidates to be voted for at an election.

We find nothing, either in the law or in the facts before us, that justified the respondents in rejecting this group of thirty-five signatures. These thirty-five signatures added to the thirty-three admittedly valid signatures give a total of sixty-eight valid signatures on the election nomination papers in this case. This meets the requirements of G. L. 1923, chap. 11, sec. 13.

The respondents further contend that, even though there be a sufficient number of qualified signers, the nomination papers in question are invalid for failure to comply with G. L. 1923, chap. 11, sec. 15, the pertinent part of which is as follows: "Every certificate of nomination and every nomination-paper shall, besides containing the names of candidates, specify as to each: (1) the office for which he was nominated. . . . " They argue that the nomination papers do not comply with the statute in that they fail to designate the office for which the candidates are nominated because the ward is not specifically designated after each candidate's name. This question was considered and decided by us in the recent case of *Hartigan, ex rel., Cahir* v. *Molloy, et al.*, 61 R. I. 495, and needs no further discussion here.

It may be noted, however, that the facts in the instant case are stronger than in the *Cahir* case. In this case the eight pages of the nomination papers, besides being held together by a clip, were fastened in such a manner that the pages could not be separated without tearing, and the designation "Ward 6" is clearly written in ink in the upper right-hand corner of the first page. There is thus greater reason than in the *Cahir* case for our finding that the respondents were not put in doubt or misled by the omission upon which they now rely and that the nomination papers of these relators substantially complied with the statute.

In the circumstances before us, we find that the relators have established a case for the relief they seek.

The prayer of the relators for a writ of mandamus is therefore granted.

*Daniel A. Colton,* for relator.

*John T. Walsh,* Assistant City Solicitor, of City of Providence, for respondents.